UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

KIMBERLY M. CANNON,

      Petitioner,

v.                             Case No.  3:15cv213/MCR/CJK

JULIE L. JONES,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254, with supporting memorandum.  (Docs. 1, 2).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 22).  Petitioner replied. (Doc. 25).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the court show that petitioner is not entitled to habeas relief, and that the petition should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

On March 2, 2011, petitioner was charged by information filed in Santa Rosa County Circuit Court Case No. 11-CF-249, with one count of introducing or possessing upon, or sending from the grounds of a county detention facility, a contraband article in violation of section 951.22, Florida Statutes.  (Doc. 11, Ex. A2).[1]  The charge arose from these facts.  On or about July 4, 2010, and between then and August 3, 2010, petitioner, while incarcerated at the Santa Rosa County Jail awaiting trial for manslaughter and violation of probation charges in other cases, hand-delivered a manila envelope to Tim Grantham (an investigator with the Office of the Public Defender) while Grantham was visiting another inmate at the jail.  The manila envelope was addressed in handwriting to "Tim Grantham, Public Defender's Office, Tony Henderson".  At the time, petitioner was represented by Assistant Public Defender Tony Henderson on the manslaughter charge.  The manila envelope contained nine sealed, stamped, standard-sized mail envelopes pre-addressed to persons not employed by the Public Defender's Office.  Also included in the manila envelope was an additional letter addressed to Mr. Grantham and Mr. Henderson.  When learning that the manila envelope contained pre-addressed non-

---

[1]All references to exhibits are to those provided at Doc. 22.

legal mail, which is contraband, Mr. Henderson directed Mr. Grantham to return the manila envelope and its contents to the county jail.  Once returned, the contents of the manila envelope were examined by jail staff and it was discovered that the letters inside the pre-addressed envelopes requested individuals to assist petitioner in escaping from her incarceration by aiding in an escape plan when she made an appearance at the Santa Rosa County Courthouse.  The manila envelope and its contents were determined to be contraband originated by petitioner.  (Exs. A1-A3 (arrest report, charging information and manila envelope), Ex. G, pp. 14-15 (factual basis described at plea hearing); Ex. K, pp. 51-54 (transcript of sentencing hearing)).

Also on March 2, 2011, petitioner was charged by information filed in Santa Rosa County Circuit Court Case No. 11-CF-250, with a separate count of possessing in, and sending from the grounds of, the Santa Rosa County Jail a different article of contraband.  (Ex. B2).  That charge arose from these facts.  Between June 1, and June 30, 2010, petitioner mailed from the Santa Rosa County Jail a different manila envelope to Tony Henderson at the Public Defender's Office.  Plaintiff addressed the envelope to "Tina, for: Tony Henderson, Atty, 190 Governmental Center, Pensacola, FL 32502" and marked the manila envelope "Attorney/Client Privileged Mail".  The manila envelope contained sixteen sealed, stamped, standard-sized mail envelopes pre-addressed to persons not employed by the Public Defender's Office.

The manila envelope was seized from the Public Defender's Office pursuant to a search warrant obtained after the State Attorney's Office became aware of the first incident (described above) and learned, through interviews of employees of the Public Defender's Office, that there was another manila envelope with similar contents. Upon examination, jail staff discovered that the letters inside the pre-addressed envelopes requested individuals to assist petitioner in escaping from the custody of the jail during transport to and from court hearings at the Santa Rosa County Courthouse. This manila envelope and its contents were determined to be contraband sent by petitioner. (Exs. B1-B3 (arrest report, charging information and manila envelope), Ex. G, pp. 15-16 (factual basis described at plea hearing); Ex. K, pp. 51-54 (transcript of sentencing hearing)).

In both Case Numbers 11-CF-249 and 11-CF-250, the State filed notices of intent to seek sentencing as an Habitual Felony offender (HFO) pursuant to section 775.084(1)(a), Florida Statutes, (Ex. C), and notices of intent to offer "similar fact evidence of other crimes, wrongs, or acts" ("*Williams* Rule" evidence) pursuant to section 90.404, Florida Statutes. (Ex. D). On June 15, 2011, petitioner filed a *pro se* motion to dismiss the charges on equal protection and double jeopardy grounds. (Ex. E1). With regard to double jeopardy, petitioner argued that because the conduct giving rise to the contraband charges also gave rise to two probation violation

charges to which petitioner pleaded guilty and was sentenced to 15 years in prison in Escambia County Circuit Court Case No. 02-CF-404, and to 10 years in prison in Escambia County Circuit Court Case No. 04-CF-707, her prosecutions in the Santa Rosa County criminal cases violated double jeopardy principles.  (Ex. E1).  The state circuit court struck the motion to dismiss on June 17, 2011, as a nullity due to petitioner's representation by counsel.  (Ex. E2).

A pretrial hearing took place on October 7, 2011.  The hearing initially commenced on the State's *Williams* Rule notice; however, discussion turned to petitioner's sentence exposure based on the felony offense degrees, the guidelines scoresheet, petitioner's qualification as an HFO and her eligibility for consecutive sentencing in Case Nos. 11-CF-249 and 11-CF-250 with sentences she was serving in other cases.  The prosecutor, Robert Elmore, stated that the guidelines scoresheet provided for a lowest permissible prison sentence of 56.5 months.  (Ex. G, p. 4).  As to petitioner's qualification for HFO sentencing, Mr. Elmore explained:

> MR. ELMORE:  Basically it [HFO] just doubles the exposure.  And here's my understanding of the law, Judge.  She is charged right now with two third-degree felonies.  If we try one of those and then she's sentenced after being found guilty, the Court would have available 10 years sentencing as a habitual felony offender.  Then if we tried the other one and she is found guilty and sentenced her on that one, the Court could sentence her to an additional 10 years as a habitual felony offender.
>
> THE COURT:  Where they would have been five it just doubles.

MR. ELMORE:  Basically it doubles the exposure.  Now Judge the other thing is if she enters a plea as charged to both counts, the State cannot seek consecutive sentencing because any sentencing as a habitual felony offender must be concurrent if they are sentenced at the same time.

So basically Judge, if she goes to trial my intention is to seek 20 years as a habitual felony offender.

THE COURT:  You would 20 years consecutive.

MR. ELMORE:  Yes.

THE COURT:  To whatever she is severing [sic].

MR. ELMORE:  Yes, sir.

THE COURT:  And obviously the Judge gets to impose the sentence.

MR. ELMORE:  Absolutely, Judge.  You have the discretion to sentence her.  If we – if you find her as a habitual felony offender, you have basically unbridled discretion between zero and 10 years on each count.

. . . .

MR. RUSSELL [Defense counsel]:  As far as her sentences, Judge, but let me just clarify something for the [r]ecord.

Did the State say that if she was to plead at one time to both cases then the Court would be limited to concurrent HFO in both cases?

MR. ELMORE:  That's my belief, is the law is that we cannot double enhance. . . . [W]hen you're being sentenced as an HFO you cannot receive consecutive sentences.

(Ex. G, pp. 4-6, 7).  Following a recess, petitioner executed a plea form titled "Sentence Recommendation", in which she indicated she understood the nature of the charges and the consequences of pleading guilty, and that it was her desire to plead guilty to both charges.  (Ex. F).  The plea form reflected that the maximum possible sentence for each count was five years in prison, that there was no agreement by the State and petitioner as to sentence and that:  "State will seek maximum HFO sentence of 10 years prison concurrent each case.  Defendant will seek lesser sentence."  (Ex. F, p. 1).  Following a plea colloquy with the court, petitioner entered a "straight-up" plea of guilty to the contraband charge in each of Case Nos. 11-CF-249 and 11-CF-250.  (Ex. G).  Prior to the court accepting petitioner's plea, the prosecutor confirmed that whether or not petitioner was sentenced as an HFO, he would "ask for 10 years either way."  (Ex. G, p. 19).  Immediately prior to accepting petitioner's plea, the court inquired:

> THE COURT:  [I] just want to make sure there's no appeal and I want to make sure that if you want to go to trial if you think somehow that these letters were not contraband, I want you to be able to have the opportunity.  So basically before I accept your plea I just want to make sure you and I have had this frank discussion.
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  Is there anything else that I need to know?

THE DEFENDANT:  I did have a motion to dismiss that I wanted to enter into the Court which my attorney declined, saying he thought there was no legal merit, and I felt the Court should have a say in that.

THE COURT:  And I know we're getting into the attorney-client relationship, but I'll ask your attorney.  Sir, did she discuss with you a motion to dismiss?

MR. RUSSELL [Defense counsel]:  Yes, sir.  We discussed several motions and based on my research and review of the file, I explained to her that I didn't think they had legal merit so we decided –

THE COURT:  And some of those decisions are your attorney Mr. Russell's to make.  I understand that maybe you would like for me to look at those, but he had to make a judgment as to whether they would – that he could in good faith file them.  I guess he's decided.

You don't believe, Mr. Russell, that you could in good faith as an officer of the court file those motions?

MR. RUSSELL:  That's correct, Judge.

THE COURT:  All right.  Knowing that –

MR. ELMORE:  The defendant must recognize at this time that by entering this plea of guilty she waives any such motions.

THE COURT:  Do you understand that, Ms. Cannon?

THE DEFENDANT:  Yes, sir.

THE COURT:  Sorry, Cannon.  Ms. Cannon, do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Do you still want to persist in your guilty plea? Because what this means is those – whatever motions to dismiss you think you

might have had, they're not going to be reviewed and your guilty plea would stand.

THE DEFENDANT:  Right.

THE COURT:  Okay.  Do you wish to go forward with your guilty plea?

THE DEFENDANT:  Yes, sir.

(Ex. G, pp. 20-22).  The court found petitioner's guilty plea freely and voluntarily made with an understanding of its consequences and the nature of the charges, and accepted the plea.  Sentencing was deferred.  (Ex. G, pp. 22-25).

Prior to sentencing, petitioner filed a *pro se* Petition for Writ of Prohibition and addendum in the trial court seeking to bar Assistant State Attorney Robert Elmore from continuing as the prosecutor of her case.  (Ex. H1).  The trial court struck the motion as a nullity due to petitioner's representation by counsel.  (Ex. H2).  Petitioner also filed a *pro se* Motion to Appoint Substitute Counsel pursuant to *Nelson v. State*, 274 So. 2d 256 (Fla. 4th DCA 1973), citing Mr. Russell's refusal to file "both defendant's motion to dismiss and motion to suppress as being without legal merit", counsel's failure to depose "key witnesses Tony Henderson and Timothy Grantham", and counsel's "refus[al] to research defendants' [sic] theory of defense as well as her mental stability at the time of the alleged offense", thereby leaving her with "no defense".  (Ex. I).

At a hearing scheduled for petitioner's sentencing, the court addressed sentencing as well as petitioner's *pro se* Motion to Appoint Substitute Counsel. Relating to sentencing, the court inquired:

> THE COURT:  [Y]ou're seeking a 20 year HFO sentence on this one; is that right?
>
> MR. ELMORE:  Judge, let me go ahead and state something about that.
>
> THE COURT:  Yes, sir.
>
> MR. ELMORE:  Last time we were here, I was laboring under a couple of misimpressions.  One misimpressions [sic] was that I had an accurate score sheet.  As the court knows now, the state has filed an accurate score sheet that reflects all of her criminal history.
>
> And the other misimpression I was laboring under was legal misimpression, and that was I believed that any sentence for the two separate contraband cases, if sentenced together, would have to be a concurrent HFO sentence if the state treated it as a HFO sentence.  I subsequently educated myself, Judge, and that is not correct.
>
> Because they are separate criminal episodes, she could be sentenced separately and consecutively as an HFO on those counts, and so in both cases, 249 and 250 so she does face a possible 20 years as habitual felony offender.
>
> However, Judge, as I noted in my letter, if she relied on the incorrect score sheet, I've invited her to withdraw her plea if she replied [sic] upon it, and as well, Judge, as I think I stated previously, that she was only facing a possible 10 years HFO at the time of the entry of the plea, and therefore she may have relied upon that as well, and so for either of those reasons, I would – I'm not opposing it if she wishes to withdraw her plea, the plea she entered in this case.

However, she does so at the jeopardy with full knowledge now that it is possible, at least, that the court could impose consecutive HFO sentences if she goes to trial and if she's sentenced or if she pleads and is sentenced subsequently, too.  You know, at this point today, I think that I would be bound by my earlier statements, and if she proceeds to sentencing today, I'm not going to recommend any more than 10 years total.

THE COURT:  You're asking for 10 years consecutive, but that's the most you're going to ask for?

MR. ELMORE:  What I've planned to ask for if she proceeds to sentencing today is five years each count consecutive for a total of 10 years as a criminal punishment code sentence.  It doesn't change the HFO.  Basically, she's facing 10 years anyway and, you know, since I feel bound by that 10 years representation by the plea, if she does not withdraw the plea then – that's where I would be.  I would be recommending today two consecutive five year sentences.

THE COURT:  And the court can sentence her to whatever the court wants to, consecutive or concurrent; is that right?

MR. ELMORE:  The court can, and the court – there is a guideline number that is – I have to pull it out here, Judge.

THE COURT:  The guideline is 105.6; is that right?

MR. ELMORE:  Yes, Your Honor.

THE COURT:  Which adds up to be a little less than 10 years.

MR. ELMORE:  Yes, 10 years is 120 months so a little bit less than 9 years actually, I guess.

(Ex. J, 7-10).  The court asked petitioner her intention with regard to her guilty plea in light of Mr. Elmore's statements and her request for a *Nelson* hearing.  Petitioner

responded that she wanted an aggressive attorney due to the State's pursing an "aggressive vendetta" against her and that she did not feel she was prepared at that time to decide whether to withdraw her plea.  (Ex. J, p. 11).  Petitioner explained that Mr. Russell had not deposed key witnesses, Tony Henderson and Timothy Grantham, and that counsel had declined to present motions to suppress and to dismiss that she researched and wrote.  (*Id.*, pp.12-15).  Petitioner advised the court that she had consulted with private counsel about the motions, that private counsel thought they had some merit, and that after having brought to Mr. Russell's attention her mental state and medications she was taking at the time of the crimes, Russell "has refused to present that defense in favor of no defense."  (*Id.*, p. 15).

In response to petitioner's assertions, Attorney Russell advised the trial court that he had, in fact, deposed both Tony Henderson and Timothy Grantham, as well as other substantive witnesses such as secretaries at the Public Defender's Office, and law enforcement personnel.  (Ex. J, pp. 15-16).  Attorney Russell also advised that he had discussed all motions with petitioner and that she had given him a motion to suppress, but after discussing it with her and conducting research it was his professional opinion that "they did not have enough merit to file with the court. So that's why I didn't file them".  (*Id.*, p. 16).  Attorney Russell also researched the issue regarding petitioner's medication, and it was again counsel's opinion "that I

didn't think that that was going to give us anything that we could argue as far as any kind of a[n] affirmative defense to the charges, and so I would agree that there are several things that we have disagreed about, but based on my experience and training and research, I just didn't think they were legally sufficient." (*Id.*, pp. 16-17). The trial court found petitioner had not satisfied her burden of demonstrating that Attorney Russell was ineffective (necessary to obtain different appointed counsel under *Nelson*), denied her motion to substitute counsel and advised her that she could either represent herself or hire private counsel. (*Id.*, pp. 17-20). After petitioner asked leave of court to retain private counsel and indicated her belief that there was a possibility she could hire private counsel, the court granted petitioner 10-day leave to do so while allowing Attorney Russell to remain as counsel. (*Id.*, pp. 20-26). During these discussions, the prosecutor reiterated: "Judge, if she wants to withdraw her plea, I want you to let her do it." (*Id.*, p. 22).

At a telephonic proceeding held 10 days later on February 13, 2012, petitioner advised the court that she attempted to retain private counsel but was unable to do so. Petitioner asked the court to set a date for sentencing and to maintain Attorney Russell as her counsel if she still could not retain private counsel. (Ex. K, p. 3). The trial court gave petitioner an additional 10 days to retain private counsel, and ordered that sentencing occur within 30-45 days thereafter. (*Id.*, pp. 4-5).

Petitioner retained private counsel, Attorney Cheryl Gooden, and the parties appeared for sentencing on April 2, 2012. (Ex. L). Without objection, the State admitted exhibits in support of petitioner's qualification for sentencing as an HFO. (*Id.*, pp. 8-9). The parties discussed that the sentencing designation as an HFO was within the court's discretion. (*Id.*, pp. 9, 12). The State again advised the court:

> MR. ELMORE: And, Judge, for the purposes of the sentencing today, as I've explained on the record before in this case, at the time of the entry of the plea the State indicated that it was under the impression that the court must impose concurrent HFO sentences.
>
> So the State would not, you know, recommend anything beyond that. Basically, what the defendant, as the State sees it today, faces either a possible 10 years under the Guidelines as five years consecutive, each count. Or a possible 10 years per count concurrent HFO sentence.
>
> So we're looking at 10 years either way as the maximum penalty today, Judge.

(Ex. L, pp. 6-7). The court declined to designate petitioner an HFO, (*id.*, p. 36), and sentenced petitioner to 60 months in prison in Case No. 11-CF-249, consecutive to any sentence petitioner was then serving. (*Id.*, p. 63). Petitioner was sentenced in Case No. 11-CF-250, to 35 months, consecutive to the 60 months and also consecutive to any other sentence petitioner was serving. (*Id.*, p. 63). The total sentence was 95 months, which was the lowest permissible sentence under the Criminal Punishment Code (CPC). (*Id.*, p. 63). Written judgments in each case were

rendered that day, April 2, 2012.  (Ex. N).  The Florida First District Court of Appeal (First DCA) affirmed the judgments on January 15, 2013, per curiam and without written opinion.  *Cannon v. State*, No. 1D12-1970, 105 So. 3d 524 (Fla. 1st DCA 2013) (Table) (copy at Ex. S).

On April 25, 2013, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Ex. T).  The motion was stricken by order rendered May 10, 2013.  (Ex. U).  Petitioner filed an amended motion on June 3, 2013 (Ex. V), which she amended (Ex. W).  The state circuit court struck the motions as facially insufficient on October 1, 2013, with leave to amend.  (Ex. X). Petitioner filed a third amended Rule 3.850 motion on November 7, 2013.  (Ex. Y). The state circuit court denied relief without an evidentiary hearing.  (Ex. Z).  The First DCA affirmed, per curiam and without written opinion, with the mandate issuing December 5, 2014.  *Cannon v. State*, No. 1D14-2889, 151 So. 3d 1233 (Fla. 1st DCA 2014) (Table) (copy at Ex. DD).

Prior to issuance of the mandate in her postconviction appeal, petitioner filed a *pro se* "Second, or Successive Motion for Postconviction Relief" under Fla. R. Crim. P. 3.850, on November 19, 2014.  (Ex. FF).  The state circuit court dismissed the motion with prejudice on May 7, 2015, finding that petitioner failed to show good cause why she could not have raised the "new" claims in her prior motion.  (Ex.

GG).  The First DCA affirmed, per curiam and without written opinion, with the

mandate issuing October 26, 2015.  *Cannon v. State*, No. 1D15-2489, 175 So. 3d

288 (Fla. 1st DCA 2015) (Table) (copy at Ex. KK).

Petitioner filed her federal habeas petition on May 4, 2015.  (Doc. 1).  The

petition raises three grounds for relief.  Respondent asserts that each claim fails for

one or more of the following reasons: (1) the claim is not cognizable on habeas

review; (2) the claim is foreclosed by petitioner's guilty pleas and convictions; (3)

the claim is procedurally defaulted; (4) the state court's rejection of the claim was

neither contrary to, nor an unreasonable application of, clearly established federal

law, and did not involve an unreasonable determination of the facts.  (Doc. 22).

RELEVANT LEGAL PRINCIPLES

<u>Effect of Guilty Plea</u>

"A guilty plea is an admission of criminal conduct as well as the waiver of

the right to trial."  *Finch v. Vaughn*, 67 F.3d 909, 914 (11th Cir. 1995) (*citing Brady*

*v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970)).  With

regard to the admission of criminal conduct, the Supreme Court explained:

> A guilty plea "is more than a confession which admits that the
> accused did various acts."  *Boykin v. Alabama*, 395 U.S. 238, 242, 89
> S. Ct. 1709, 1711, 23 L. Ed. 2d 274 (1969).  It is an "admission that he
> committed the crime charged against him."  *North Carolina v. Alford*,
> 400 U.S. 25, 32, 91 S. Ct. 160, 164, 27 L. Ed. 2d 162 (1970).  By
> entering a plea of guilty, the accused is not simply stating that he did

the discrete acts described in the indictment; he is admitting guilt of a
substantive crime.

*United States v. Broce*, 488 U.S. 563, 570, 109 S. Ct. 757, 102 L. Ed. 2d 927 (1989).

As to the accompanying waivers, the Court held:  "Waivers of constitutional rights

not only must be voluntary but must be knowing, intelligent acts done with sufficient

awareness of the relevant circumstances and likely consequences."  *Brady* at 748.

Accordingly, the standard for determining the validity of a guilty plea is "whether

the plea represents a voluntary intelligent choice among the alternative courses open

to the defendant."  *Alford*, 400 U.S. at 31; *Boykin*, 395 U.S. at 242.  The assistance

of counsel received by a defendant is relevant to the question of whether a

defendant's guilty plea was knowing and intelligent insofar as it affects the

defendant's knowledge and understanding.  *See McMann v. Richardson*, 397 U.S.

759, 770-71, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970).

"Once a plea of guilty has been entered, nonjurisdictional challenges to the

conviction's constitutionality are waived, and only an attack on the voluntary and

knowing nature of the plea can be sustained."  *Scott v. Wainwright*, 698 F.2d 427,

429 (11th Cir. 1983).  This waiver includes all claims of ineffective assistance of

counsel "except insofar as the ineffectiveness is alleged to have rendered the guilty

plea involuntary."  *United States v. Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000);

*Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992) (holding that by pleading

guilty, defendant waived ineffective assistance of counsel claim involving pre-plea issues, where claim was not about defendant's decision to plead guilty).  The Supreme Court said in *Tollett v. Henderson*, 411 U.S. 258, 93 S. Ct. 1602, 36 L. Ed. 2d 235 (1973):

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann*.

*Id.*, 411 U.S. at 267.

The only exception that allows federal habeas review of a guilty plea conviction based on alleged infirmities in pretrial proceedings is when state law permits a defendant to appeal the results of such pretrial proceedings.  *See Lefkowitz v. Newsome*, 420 U.S. 283, 289, 95 S. Ct. 886, 43 L. Ed. 2d 196 (1975).  In Florida, a defendant may not appeal from a guilty or nolo contendere plea except as follows:

> (i) Reservation of Right to Appeal. A defendant who pleads guilty or nolo contendere may expressly reserve the right to appeal a prior dispositive order of the lower tribunal, identifying with particularity the point of law being reserved.

> (ii) Appeals Otherwise Allowed. A defendant who pleads guilty or nolo contendere may otherwise directly appeal only

    a. the lower tribunal's lack of subject matter jurisdiction;

    b. a violation of the plea agreement, if preserved by a motion to withdraw plea;

    c. an involuntary plea, if preserved by a motion to withdraw plea;

    d. a sentencing error, if preserved; or

    e. as otherwise provided by law.

Fla. R. App. P. 9.140(b)(2)(A).

<u>Exhaustion and Procedural Default</u>

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all available state court remedies for challenging her conviction, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (*quoting Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  The petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Picard*, 404 U.S. at 277-78.  A claim that was not properly presented to the state court and can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.,* procedurally barred from federal review.  *O'Sullivan*,

526 U.S. at 839-40, 848; *Hittson v. GDCP Warden*, 759 F.3d 1210, 1260 n.56 (11th Cir. 2014) ("Where a return to state court would be futile – because the petitioner's claims would clearly be barred by state procedural rules – a federal court can 'forego the needless judicial ping-pong' and treat unexhausted claims as procedurally defaulted." (*quoting Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998))); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (holding that federal habeas courts should enforce applicable state procedural bars even as to claims that were never presented to the state courts).

A claim is also considered procedurally defaulted if it was presented to the state court but rejected on the independent and adequate state ground of procedural bar or default. *Maples v. Thomas*, 565 U.S. —, 132 S. Ct. 912, 922, 181 L. Ed. 2d 807 (2012) ("As a rule, a state prisoner's habeas claims may not be entertained by a federal court when (1) a state court [has] declined to address [those] claims because the prisoner had failed to meet a state procedural requirement, and (2) the state judgment rests on independent and adequate state procedural grounds." (alterations in original) (internal quotation marks and citations omitted)); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.

*Lee v. Kemna*, 534 U.S. 362, 122 S. Ct. 877, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the state rule must be "firmly established and regularly followed," *Siebert v. Allen*, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001), or in a manifestly unfair manner.  *Ford v. Georgia*, 498 U.S. 411, 424-25, 111 S. Ct. 850, 112 L. Ed. 2d 935 (1991); *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).

A petitioner seeking to overcome a procedural default must "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L.Ed.2d 640 (1991); *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993).  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (*citing Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)).  The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the

conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  This standard is very difficult to meet:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

513 U.S. at 327.  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Id.*

Section 2254 Standard of Review

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2] The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme

---

[2]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Woods v. Donald*, — U.S. —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly

established federal law.  *See Woods*, 135 S. Ct. at 1377 (holding, as to claim that counsel was *per se* ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants:  "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam).  In applying this standard, the Supreme Court has emphasized:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.  Federal habeas review thus exists as "a guard against

> extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington, supra,* at 102-103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (*quoting Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." *Brumfield v. Cain*, — U.S. —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1).  The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence").  Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and § 2254(e)(1) interact in the context of fact-based challenges to state court adjudications.  *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011).  However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision."  *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See Panetti*, 551 U.S. at 954.  Even then, the

writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).  "If this standard is difficult to meet, that is because it was meant to be."  *Richter*, 562 U.S. at 102.

<u>Clearly Established Federal Law Governing Claims of Ineffective Assistance of Counsel in the Context of a Guilty Plea</u>

When a petitioner challenges the voluntariness of his plea based on allegations of ineffective assistance of counsel, the two-prong standard adopted in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), applies.  *See Hill v. Lockhart*, 474 U.S. 52, 58, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985); *see also Premo v. Moore*, 562 U.S. 115, 131 S. Ct. 733, 178 L. Ed. 2d 649 (2011) (identifying *Strickland* as the clearly established federal law governing a habeas petitioner's challenge to his conviction obtained through a plea bargain).  To obtain relief under *Strickland*, a petitioner must establish that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694.

In a plea situation, the focus of inquiry under the performance prong of *Strickland* is "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"  *Hill*, 474 U.S. at 56-57 (*quoting*

*McMann*, 397 U.S. at 771).  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland* at 689.  The Supreme Court has expressly warned about second-guessing professional judgments made by counsel:

> [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments.  All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court.  Even then the truth will often be in dispute.  In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case.  Counsel must predict how the facts, as he understands them, would be viewed by a court . . . .  Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.  That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

*McMann*, 397 U.S. at 769-70.  Counsel must provide advice "within the range of competence demanded of attorneys in criminal cases."  *Hill*, 474 U.S. at 56-57 (*quoting McMann*, 397 U.S. at 771).  Under this standard, representation is ineffective only if counsel commits "serious derelictions" of his duty when advising the accused.  *Stano v. Dugger*, 921 F.2d 1125, 1150-51 (11th Cir. 1991).  Absent

such blatant errors, the court should "indulge a strong presumption that counsel's conduct fell within the wide range of reasonably professional assistance." *Yordan v. Dugger*, 909 F.2d 474, 477 (11th Cir. 1990).

To meet the prejudice prong of *Strickland* in a plea situation, petitioner must establish that "counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59. Thus, while counsel can be deemed ineffective under *Strickland* for failing to provide proper advice during the plea process, petitioner must also demonstrate a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 58-59. "It is not enough for [petitioner] to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 693.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of *Strickland* was

unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105.

As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

## DISCUSSION

Ground One         "Negligent opening and inspecting of Defendant's clearly labeled legal mail outside her presence resulting in a warrantless search and contraband charges violated her First and Fourth Amendment rights, as well as her Sixth Amendment right to effective assistance of counsel where counsel refused to show these clear, obvious constitutional claims in spite of being instructed to do so, prejudicing defendant when she received an 8 year prison sentence.".  (Doc. 1, pp. 5-6).

This ground for relief has two components:  (1) a First and Fourth Amendment challenge to the search and seizure of the two manila envelopes; and (2) a challenge to trial counsel's (Attorney Russell's) failure to move to suppress the evidence and for dismissal of the charges on First and Fourth Amendment grounds.  Respondent asserts that petitioner's First and Fourth Amendment claims were waived by entry of her guilty plea and are also procedurally defaulted.  Respondent asserts that

petitioner's ineffective assistance claim should be denied because petitioner has not established that the state court's rejection of the claim was contrary to or an unreasonable application of clearly established federal law, or that it rested upon an unreasonable determination of the facts.  (Doc. 22, pp. 29-44).

A.    Petitioner's First and Fourth Amendment Claims

Petitioner's First and Fourth Amendment claims are based on nonjurisdictional matters that preceded petitioner's entry of her guilty plea and that do not implicate the voluntariness of her plea.  Petitioner did not expressly reserve the right to appeal her First or Fourth Amendment claim, nor did she take the opportunity, offered by the State, to withdraw her plea.  Petitioner relinquished her right to challenge the search and seizure of the envelopes when she entered, and proceeded upon, her knowing, voluntary and counseled plea.  Petitioner's waiver precludes federal habeas review.

B.    Petitioner's Sixth Amendment Ineffective Assistance Claim Concerning Attorney Russell

Respondent does not argue that petitioner's guilty plea waived her ineffective assistance claim concerning Russell's failure to file petitioner's proposed motions to dismiss and to suppress.  The undersigned nonetheless concludes that the ineffective assistance claim was waived by petitioner's plea.  Although the Eleventh Circuit has held that a habeas petitioner's ineffective assistance claim for counsel's failure to

file a motion to suppress was not waived by his subsequent guilty plea, *Arvelo v. Sec'y, Fla. Dep't of Corr.*, 788 F.3d 1345 (11th Cir. 2015), the present case is distinguishable in that it involves the case-specific, intervening circumstances of petitioner being given the opportunity to withdraw her plea, petitioner retaining new counsel to advise her on that decision, and petitioner choosing to proceed with her guilty plea despite her former counsel's failure to file the pre-trial motions. Petitioner is complaining about her *first* attorney's conduct (Attorney Russell) in failing to file motions to dismiss and to suppress; yet *after* petitioner entered her guilty plea upon Russell's advice, she was allowed to reconsider her decision (due to the prosecutor's representations of her sentencing exposure), retain new counsel, and withdraw her plea.  Petitioner retained new counsel (Attorney Gooden) and made an informed decision to leave her plea undisturbed and to proceed to sentencing.  Petitioner does not allege that her decision to proceed with her guilty plea was involuntary or the product of ineffective assistance by Attorney Gooden. There is a valid basis to conclude that petitioner's ineffectiveness claim concerning Attorney Russell's failure to file motions to dismiss and to suppress was waived by petitioner's later decision to proceed with her plea.  *See, e.g., Wilson  v. United States, supra*; *Bullard v. Warden, Jenkins Corr. Center*, 610 F. App'x 821, 824 (11th Cir. 2015) ("Here Mr. Bullard does not contend that his plea was involuntary due to

his counsel's failure to file a motion to suppress, so the ineffectiveness claim is waived by the plea.").[3]

Even if not waived, petitioner is not entitled to habeas relief on her ineffective assistance claim. Petitioner raised this claim as Grounds One and Three of her third amended Rule 3.850 motion. (Ex. Y, pp. 3-6, 11-13). The state circuit court identified the governing legal standard as the *Strickland* standard, (Ex. Z, pp. 2-3), and denied relief as follows:

### Refusing to present Defendant's Motion to Dismiss

> Defendant first alleges that her trial counsel was ineffective for refusing to present Defendant's motion to dismiss claiming that the charges were a result of an illegal search and seizure because jail officials and prosecutors violated her right to confidential communication with her then attorney. Defendant claims that trial counsel's refusal to present the motion to dismiss "forced defendant to abandon hopes of proceeding to trial, denying her constitutional right to a fair and timely trial as she lost confidence in an attorney who refused to research or present a valid argument."
>
> Defendant's claim is refuted by the record. During the Court's extensive plea colloquy, the following transpired:
>
> > . . . . [Block quotation of plea colloquy transcript at pp. 20-22, reproduced above in Background and Procedural History]

---

[3]The undersigned cites *Bullard* only as persuasive authority and recognizes that the opinion is not considered binding precedent. *See* 11th Cir. R. 36-2.

The record shows that not only was counsel not deficient for failing to file a motion to dismiss without legal merit, but Defendant was far from prejudiced as she was aware her counsel would not file the motion to dismiss and knowingly chose to proceed with the plea. Defendant is not entitled to relief as to this claim.

. . . .

## Failing to Investigate Facts and Present Defendant's Motions

Defendant next claims that Mr. Russell was ineffective for failing to research issues within Defendant's proffered motion to dismiss and motion to suppress in which she detailed an illegal search and seizure. Specifically, Defendant alleges that Mr. Russell failed to take formal depositions of key witnesses Tony Henderson and Tim Grantham. Defendant argues that by deposing these witnesses counsel would have discovered that Mr. Henderson failed to follow the rules of professional conduct and that Mr. Henderson had a conflict of interest when representing Defendant.  Defendant alleges that the presentation of either of her proposed motions to dismiss or suppress "would have had a high probability of resulting in the favorable outcome of dismissal of charges or suppression of evidence."  Defendant further alleges that counsel's deficiencies "forced defendant to abandon hopes of proceeding to trial."

Initially, it appears that Defendant's claim could be considered facially insufficient in that she fails to allege that, but for Mr. Russell's failure to depose witnesses and file the motions to dismiss and suppress, she would not have entered a plea but proceeded to trial.  Even if this Court gives Defendant broad latitude and treats Defendant's statement that she was "forced to abandon hope of proceeding to trial" as satisfying the prejudice pleading requirement, Defendant's claim appears to be duplicative of her first and second claim and is refuted by the record.

As stated previously in this order, Defendant's counsel indicated at the plea hearing that he and Defendant had discussed several motions; he had conducted research and reviewed the file and determined that the motions were without legal merit and he could not

in good faith file them with the court.  Defendant represented on the record that she understood she was waiving her right to file any of the motions when she entered a plea of guilty to the charges.  Further, at the February 3, 2012 hearing, after Defendant had entered her plea but before she was sentenced, Defendant made these same allegations against Mr. Russell on the record.  Mr. Russell represented to the Court that contrary to Defendant's assertion, he had, in fact, taken the depositions of both Mr. Henderson and Mr. Grantham.  Mr. Russell also indicated again that he had researched Defendant's proposed motions to suppress and dismiss and determined that they did not have enough legal merit to file them with the court.  The Court notes that based on reasons unrelated to the instant allegations, Defendant was given the opportunity to withdraw her plea at the February 3, 2012 hearing, but ultimately declined to do so.  Therefore, Defendant cannot demonstrate that she would not have entered a plea (and in this case, that she would have withdrawn her plea) if her counsel had not filed said motions.  Additionally, the Court notes that based on a review of the Defendant's allegations regarding the content of her motions, the motions would have had little to no legal merit and would not have been granted by the Court.  Consequently, Defendant is unable to demonstrate that her counsel was deficient or that she suffered any prejudice by Mr. Russell's refusal to file the motion to dismiss and motion to suppress.  Defendant is not entitled to relief as to this claim.

(Ex. Z, pp. 5-7, 8-9) (footnotes omitted). The First DCA summarily affirmed. (Ex. DD).

The relevant decision for purposes of 28 U.S.C. § 2254 is the First DCA's summary affirmance, which is the final state court adjudication on the merits of petitioner's claim.  *Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any

indication or state-law procedural principles to the contrary."); *Wilson v. Warden, Ga. Diagnostic Prison*, 834 F.3d 1227, 1235 (11th Cir. 2016) (defining the relevant decision for purposes of § 2254 review as the state appellate court's summary affirmance of the lower tribunal's decision), *petition for cert. filed*, No. 16-6855 (U.S. Nov. 15, 2016).  Where, as here, "the last adjudication on the merits provides no reasoned opinion, federal courts review that decision using the test announced in *Richter*."  *Wilson*, 834 F.3d at 1235.  The *Richter* test provides that "[w]here a state court's decision is unaccompanied by an explanation," a petitioner's burden under section 2254(d) is to "show[ ] there was no reasonable basis for the state court to deny relief."  *Richter*, 562 U.S. at 98.  "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the] Court."  *Id.* at 102.

Under the *Richter* test, petitioner must establish there was no reasonable basis for the Florida First DCA to affirm the denial of her ineffective assistance claim.  In reviewing the reasonableness of the First DCA's decision, this court may, but is not required to look to the reasoning of the state court below (the state circuit court). The Eleventh Circuit explained in *Wilson*:

> When the reasoning of the state trial court was reasonable, there is necessarily at least one reasonable basis on which the state [appellate] court could have denied relief and our inquiry ends.  In this way, federal courts can use previous opinions as evidence that the relevant state court decision under review is reasonable.  But the relevant state court decision for federal habeas review remains the last adjudication on the merits, and federal courts are not limited to assessing the reasoning of the lower court.

834 F.3d at 1239.

The state circuit court reasonably concluded that petitioner failed to establish deficient performance and prejudice.  In addition to the reasons articulated by the circuit court, the arrest report supporting the contraband charge in Case No. 11-CF-249 reveals that contrary to petitioner's assertion here, the manila envelope was not labeled "legal mail".  (Ex. A3).  Further, jail officials were well within their authority to search the envelope after Assistant PD Henderson and Investigator Grantham opened it and turned it over to jail officials due to its suspicious contents (non-legal personal letters that appeared to be contraband because petitioner had circumvented regular jail procedures for sending them).  (*See* Exs. A1, A3).  As to the contraband charge in Case No. 11-CF-250, the arrest report supporting that charge reveals that although the envelope was falsely labeled "Attorney/Client Privileged Mail", it was searched only after a warrant was obtained.  (*See* Exs. B1, B3).

Thus, even were petitioner's ineffective assistance claim not waived by entry of the guilty plea, there is a reasonable basis on which the First DCA could have

rejected the claim.  The First DCA's decision is not contrary to, and did not involve

an unreasonable application of, clearly established federal law as determined by the

United States Supreme Court.  Petitioner is not entitled to federal habeas relief on

Ground One.

| Ground Two | <u>"Cumulative impact of counsel's deficiencies including being prohibited from presenting her theory of defense violated her 6th Amendment right to effective assistance of counsel and 14th Amendment right to due process resulting in prejudice to Defendant by actual prison sentence of 8 years consecutive."</u> (Doc. 1, p. 9). |

In this ground for relief, petitioner argues that Attorney Russell committed

five errors and Attorney Gooden committed one error amounting, when viewed in

the aggregate, to ineffective assistance.  Petitioner lists these errors:  (1) Attorney

Russell failed to investigate and present petitioner's proposed involuntary

intoxication defense; (2) Attorney Russell told petitioner he would proceed to trial

with "no defense"; (3) Attorney Russell failed to present petitioner's motions to

dismiss and to suppress (discussed in Ground One, *supra*); (4) Attorney Russell

"failed to challenge indictment on multiplicity grounds that charges arose from a

single episode" and failed to seek suppression of evidence on the grounds that

"evidence discovered through a 4th Amendment violation of illegal search and

seizure could not be used in a new offense but only in the revocation of probation

hearing"; (5) Attorney Russell failed to file a motion to disqualify the presiding

judge; (6) Attorney Gooden failed to preserve for appellate review the trial court's denial of her request for a downward departure sentence.  (Doc. 1, pp. 10-11). Petitioner asserts that the cumulative effect of these actions or inactions left her feeling "forced to take a plea upon denial of her request for new counsel, which rendered her plea involuntary."[4]  (*Id*., p. 9).

Respondent asserts that the cumulative error claim is procedurally defaulted, because although petitioner presented a claim of cumulative error in her third amended Rule 3.850 motion, she identified a total of eight, not six, alleged errors by counsel.  Respondent argues that "based alone on the differing number of individual deficiencies attributed to trial and sentencing counsel, Petitioner's claim of cumulative error in federal habeas is obviously not the same as that which the state court 'adjudicated on the merits' within the  meaning of § 2254(d)."  (Doc. 22, p. 46).  Respondent argues in the alternative that petitioner is not entitled to habeas relief because the United States Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief; therefore, the state court's rejection of petitioner's cumulative error claim cannot be contrary to or involve an unreasonable application of clearly established federal law.  (Doc. 22, pp.

---

[4] The trial court denied petitioner's request for new *appointed* counsel, but allowed her to retain private counsel.

46-56).  The court need not decide the procedural default issue, because petitioner's claim fails for other reasons.

A.    Cognizability of Petitioner's "Cumulative Impact" Claim on Federal Habeas Review

Petitioner lists the alleged errors of counsel, but does not provide sufficient factual support for any particular error to show that such error, individually, rose to the level of a constitutional violation.  Although the Eleventh Circuit has noted, on direct appeal of a federal conviction, that the cumulative effect of several errors that are harmless by themselves could so prejudice a defendant's right to a fair trial that a new trial is warranted,[5] neither the United States Supreme Court nor the Eleventh Circuit has expressly recognized, as cognizable under § 2254, a freestanding constitutional "cumulative effect" claim grounded on a petitioner's assertion that the cumulative effect of alleged errors of defense counsel violated the Constitution even though such errors, individually, were harmless or non-prejudicial.  Recognizing this fact, the Eleventh Circuit stated:

---

[5] *See United States v. Baker*, 432 F.3d 1189, 1223 (11th Cir. 2005) ("The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal.") (internal quotations and citations omitted); *United States v. Ramirez*, 426 F.3d 1344, 1353 (11th Cir. 2005) ("[T]he 'cumulative effect' of multiple errors may so prejudice a defendant's right to a fair trial that a new trial is required, even if the errors considered individually are non-reversible.") (*quoting United States v. Thomas*, 62 F.3d 1332, 1343 (11th Cir. 1995), *and citing United States v. Adams*, 74 F.3d 1093, 1099-1100 (11th Cir. 1996)).

        The Supreme Court has not directly addressed the applicability
of the cumulative error doctrine in the context of an ineffective
assistance of counsel claim.  However, the Supreme Court has held, in
the context of an ineffective assistance claim, that "there is generally
no basis for finding a Sixth Amendment violation unless the accused
can show how specific errors of counsel undermined the reliability of
the finding of guilt."  *United States v. Cronic*, 466 U.S. 648, 659 n. 26
(1984).

*Forrest v. Fla. Dep't of Corr.*, 342 F. App'x 560, 564 (11th Cir. 2009) (unpublished

but recognized for persuasive authority).  *See also, e.g., Conklin v. Schofield*, 366

F.3d 1191, 1210 (11th Cir. 2004) (applying pre-AEDPA standard of review and

denying claim that trial court errors and conduct of trial counsel combined to rob

petitioner of fair trial and sentencing, but not relying upon Supreme Court precedent

for its decision); *Sims v. Singletary*, 155 F.3d 1297 (11th Cir. 1998) (applying pre-

AEDPA standard of review and holding that district court erred in finding that

cumulative guilt stage errors prejudiced petitioner during penalty phase); *Cargill v.

Turpin*, 120 F.3d 1366, 1386 (11th Cir. 1997) (applying pre-AEDPA standard of

review and declining petitioner's invitation to entertain "cumulative error" claim

because petitioner's trial was not fundamentally unfair); *Dobbs v. Kemp*, 790 F.2d

1400, 1505 (11th Cir. 1986) (applying pre-AEDPA standard of review and denying

petitioner's claim that improper prosecutorial argument and evidentiary errors

rendered trial fundamentally unfair and citing *Donnelly v. DeChristoforo*, 416 U.S.

637, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1973)); *Bronstein v. Wainwright*, 646 F.2d

1048, 1056 (5th Cir. 1981) (same).[6]  Petitioner's "cumulative impact" claim based

on attorney errors that, individually, did not rise to the level of a constitutional

violation, does not state a basis for federal habeas relief.  *See* 28 U.S.C. § 2254(a);

*Swarthout v. Cooke*, 562 U.S. 216, 219, 131 S. Ct. 859, 178 L. Ed. 2d 732 (2011)

("The habeas statute unambiguously provides that a federal court may issue a writ

of habeas corpus to a state prisoner only on the ground that he is in custody in

violation of the Constitution or laws or treaties of the United States." (internal

quotations and citations omitted)).  "Errors that are not unconstitutional individually

cannot be added together to create a constitutional violation."    *Wainwright v.*

*Lockhart*, 80 F.3d 1226, 1233 (8th Cir. 1996).

---

[6] The law of other circuits is mixed on the issue of whether a claim of "cumulative effect" or "cumulative error" is cognizable on federal habeas.  The Fourth, Sixth and Eighth Circuits do not recognize cumulative error claims on federal habeas.  *See Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006) (claims of cumulative error are not cognizable on federal habeas because the Supreme Court has not spoken on this issue); *Fisher v. Angelone*, 163 F.3d 835, 852–53 (4th Cir. 1998) (ineffective assistance of counsel claims, like claims of trial court error, must be reviewed individually, rather than collectively); *Wainwright v. Lockhart*, 80 F.3d 1226, 1233 (8th Cir. 1996) ("Errors that are not unconstitutional individually cannot be added together to create a constitutional violation.  Neither cumulative effect of trial errors nor cumulative effect of attorney errors are grounds for habeas relief." (internal citations omitted)).  The Ninth Circuit recognizes cumulative error claims and identified *Chambers v. Mississippi*, 410 U.S. 284 (1973) as the clearly established federal law governing such claims.  *See Parle v. Runnels*, 505 F.3d 922, 928-29 (9th Cir. 2007).   The Tenth Circuit recognizes cumulative error claims and identified *Brecht v. Abrahamson*, 507 U.S. 619 (1993) as the clearly established federal law on this issue.  *See Darks v. Mullin*, 327 F.3d 1001, 1018 (10th Cir. 2003).  The Second and Seventh Circuits recognize cumulative effect analysis of individual claims of ineffective assistance of counsel in applying the prejudice prong of *Strickland*.  *See Williams v. Washington*, 59 F.3d 673, 682–84 (7th Cir. 1995); *Rodriguez v. Hoke*, 928 F.2d 534 (2d Cir. 1991).

B.  Merits

Even if petitioner's "cumulative impact" claim were cognizable on federal habeas review, petitioner has not established entitlement to relief.  The court, as a benefit to petitioner, has read beyond her list of errors and construed her habeas petition together with her state postconviction motion which presented each error as an individual claim of ineffective assistance.  The state circuit court addressed each individual claim and, finding no error or prejudice, concluded that petitioner's failure to establish deficient performance and prejudice as to any individual error precluded relief on her cumulative error claim.  (*See* Ex. Z, p. 18 ("Lastly, Defendant alleges that she is entitled to relief based on cumulative error.  As the Court has found no error, Defendant is not entitled to relief as to this claim.")).  The First DCA summarily affirmed.  (Ex. DD).  Given the absence of Supreme Court precedent applying the cumulative error doctrine to claims of ineffective assistance of counsel, this court cannot say that the state court's rejection of petitioner's claim is contrary to or an unreasonable application of clearly established federal law.  *See Wright v. Van Patten*, 552 U.S. 120, 126, 128 S. Ct. 743, 169 L. Ed. 2d 583 (2008) ("Because our cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established federal law."); *Schriro v. Landrigan*, 550 U.S. 465, 478, 127 S. Ct. 1933,

167 L. Ed. 2d 836 (2007) (The Arizona Supreme Court did not unreasonably apply federal law because "we have never addressed a situation like this."); *Reese v. Sec'y, Fla. Dep't of Corr.*, 675 F.3d 1277, 1287-88 (11th Cir. 2012) ("The Supreme Court has reiterated, time and again, that, in the absence of a clear answer – that is, a holding by the Supreme Court – about an issue of federal law, we cannot say that a decision of a state court about that unsettled issue was an unreasonable application of clearly established federal law."); *Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012) (declining to decide whether, under the current state of Supreme Court precedent, cumulative error claims reviewed through the lens of AEDPA can ever succeed in showing that the state court's decision on the merits was contrary to or an unreasonable application of clearly established law).

The court has also reviewed, under § 2254(d)'s deferential standard, the state court's rejection of each individual claim of attorney error now comprising petitioner's cumulative error claim.  Because the state court's rejection of each individual claim was consistent with *Strickland*, the rejection of the cumulative error claim was reasonable.  *See, e.g., Morris, supra* (analyzing each claim of trial court error and attorney error under § 2254(d), and concluding that because petitioner was not entitled to relief on any individual claim, his cumulative error claim must fail).

Petitioner's first and second alleged errors – Attorney Russell's failure to adopt an involuntary intoxication defense and his determination that no affirmative defense applied – was presented as Ground Four of petitioner's third amended Rule 3.850 motion.  (Ex. Y, pp. 14-16).  The state circuit court identified *Strickland* as the governing legal standard, (Ex. Z, pp. 2-3), and denied relief on the merits as follows:

### Failing to Investigate Involuntary Intoxication Defense

Defendant next alleges that Mr. Russell refused to research Defendant's defense theory of involuntary intoxication.  Specifically, Defendant claims that at the time she committed the instant offenses she was suffering from a condition known as Serotonin Syndrome which was caused by four medications that were being administered to her at the Santa Rosa County Jail by medical staff.  Defendant alleges that because of the Serotonin Syndrome, she was experiencing "confusion, irritability, convulsions, anxiety, dizziness, headaches, schizophrenia and preservative thoughts of suicide."  Defendant claims that she presented this information to Mr. Russell, but he refused to research or present Defendant's Serotonin Syndrome as a defense. Defendant also alleges that even with Defendant's history of mental illness, counsel never investigated or raised issues regarding Defendant's competency.  Defendant claims that she was prejudiced because she "was denied her right to a fair trial where counsel intended to present no defense and defendant could not proceed out of fear and mental duress, rendering the resultant conviction in this case fundamentally unfair."  Defendant claims that she was also prejudiced because if she could have afforded different counsel than Mr. Russell, she would have proceeded to trial which might have resulted in a dismissal of the charges or a judgment of acquittal.

Defendant's claim is facially insufficient:  Defendant fails to allege that she would not have entered a plea if her counsel had agreed to present the involuntary intoxication defense at trial.  Defendant's claim that she was prejudiced because she did not have different

"effective" counsel is not a proper claim of prejudice.  Additionally, Defendant's claim regarding counsel's failure to raise any issues regarding Defendant's competency is wholly conclusory, without any specific detail or any specific allegations of prejudice. . . .

Even if Defendant's claim regarding involuntary intoxication were properly alleged, Defendant would still not be entitled to relief. At the February 3, 2012 hearing, Mr. Russell stated that he had researched defendant's proposed defense regarding her medications and her mental state and had determined defendant did not have a viable affirmative defense to the charges on said basis.  The Court notes that violation of Section 951.22, Florida Statutes (the section under which Defendant was convicted in each of her cases) is not a specific intent crime; therefore an involuntary intoxication defense would have been inappropriate.  See Miller v. State, 805 So. 2d 885, 887 (Fla. 2d DCA 2001) (defense of involuntary intoxication only applies to specific intent offenses); State v. Oxx, 417 So. 2d 287, 290 (Fla. 5th DCA 1982) (violating section 951.22, Florida Statutes, is not a specific intent crime); see also Section 775.051, Fla. Stat.  Defendant is not entitled to relief as to this claim.

(Ex. Z, pp. 10-11).  The state circuit court concluded, as a matter of state law, that petitioner's proposed affirmative defense was not available.  The First DCA affirmed that decision.  (Ex. DD).  When the state courts have already answered the question of how an issue would have been resolved under that state's law had defense counsel done what petitioner argues he should have done, "federal habeas courts should not second-guess them on such matters" because "it is a fundamental principle that state courts are the final arbiters of state law."  *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (quotation marks omitted).  Counsel is not ineffective for failing to pursue a defense that was not available.  *Hill*, 474 U.S. at 59 ("[W]here the alleged

error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial."); *Freeman v. Attorney Gen., Fla.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim. . . ."); *see also Brownlee v. Haley*, 306 F.3d 1043, 1066 (11th Cir. 2002) (concluding that counsel was not ineffective for failing to raise issues clearly lacking in merit); *Bolender v. Singletary*, 16 F.3d 1547, 1473 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance."). The state court's resolution of this claim was consistent with *Strickland*.

Petitioner's third alleged error – Attorney Russell's "fail[ure] to litigate a Fourth Amendment claim when counsel refused to present Defendant's well-researched motions to dismiss and suppress which included facts about the illegal search of Defendant's legal mail outside of her presence that was contrary to clearly established law" (doc. 1, p. 10) – was addressed by the state court and denied on the merits as set forth in Ground One, *supra*. The state court's decision was a reasonable application of *Strickland*, because, again, counsel is not ineffective for failing to pursue a meritless claim. *Freeman, supra*.

Petitioner's fourth alleged error reads: "Counsel [Attorney Russell] failed to challenge indictment on multiplicity grounds that charges arose from a single episode or that evidence discovered through a 4th Amendment violation of illegal search and seizure could not be used in a new offense but only in the revocation of probation hearing was ineffective assistance of counsel."   (Doc. 1, p. 10). Respondent asserts, correctly, that this claim is procedurally defaulted because the only double-jeopardy-based IAC claim petitioner properly exhausted with regard to Attorney Russell is the claim that Russell was ineffective for failing to argue that it violated double jeopardy principles to prosecute petitioner in the criminal cases at issue here, when the same instances of introducing contraband were used as a basis to revoke petitioner's probation in other cases (Escambia County Circuit Court Case Nos. 02-CF-404 and 04-CF-707).  Petitioner raised this latter claim as Ground Nine of her third amended Rule 3.850 motion, and the state circuit court denied relief on the merits as follows:

### Failing to Demonstrate Double Jeopardy Violation

Defendant also alleges that her counsel was ineffective for failing to demonstrate that Defendant received multiple punishments for the same offenses in violation of double jeopardy.  Specifically, Defendant alleges that because the Assistant State Attorney, Mr. Elmore, amended the affidavit regarding Defendant's violation of probation proceedings in another case to add the allegations in the instant cases before she was formally charged she has experienced a double jeopardy violation.

Defendant is incorrect in her assertions.  In Florida the State need only demonstrate by a preponderance of the evidence that a defendant committed the subject offense in order for probation to be violated.  See Miller v. State, 661 So. 2d 353, 354 (Fla. 4th DCA 1995).  As it is a lesser standard than what is required to prove a criminal charge, a probationer's term of probation may be revoked regardless of whether she has ever been charged or convicted of any new offense.  See Mempha v. Rhay, 389 U.S. 138, 88 S. Ct. 254, 19 L.Ed.2d 336 (1967) (revocation of probation may be based on the alleged commission of offenses for which the accused is never tried).  See also State v. Jenkins, 762 So. 2d 535 (Fla. 4th DCA 2000) (affidavit of probation violation does not need to be dismissed when State has nolle prossed the charge which formed the basis for the violation of probation allegation).  In the instant case, the State did nothing improper by filing an amended affidavit of violation of probation based on the alleged commission of offenses for which Defendant had not yet been charged.  The revocation of probation based on the conduct alleged in these cases is not considered a conviction of the instant offenses, but rather a "conviction" for violation of probation.  Consequently, Defendant's claim that her counsel was ineffective for failing to demonstrate she had suffered a double jeopardy violation is without merit as Defendant did not, in fact, experience a double jeopardy violation.  Defendant is not entitled to relief as to this claim.

(Ex. Z, pp. 16-17).  The First DCA summarily affirmed.  (Ex. DD).  The Eleventh Circuit has rejected a similar double jeopardy claim.  *See United States v. Woods*, 127 F.3d 990, 993 (11th Cir. 1997) ("We similarly conclude that revocation of probation constitutes part of a defendant's original sentence and does not preclude subsequent prosecution for the criminal conduct that gave rise to the probation revocation.  Accordingly, Woods' conviction for robbery does not violate the Double Jeopardy Clause.").  The state court's decision is a reasonable application of

the *Strickland* standard. "Failure to raise meritless objections is not ineffective lawyering; it is the very opposite." *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994).

To the extent petitioner's present double-jeopardy-based IAC claim involving Attorney Russell varies from the one just discussed, petitioner failed to properly exhaust it. Thus, to the extent petitioner now suggests Russell was ineffective for failing to argue that the two Santa Rosa County criminal contraband charges should have been dismissed because the two criminal charges arose from a "single episode", that claim is procedurally defaulted because it was not fairly presented to the state postconviction court. Petitioner did not allege in her third amended Rule 3.850 motion, nor in her postconviction appeal, that Russell should have sought dismissal of the two contraband charges on double jeopardy grounds *because the two charges arose from a single episode*. (*See* Ex. Y; Ex. BB).

To the extent petitioner argues that Russell should have asserted a double jeopardy challenge on the grounds that because the evidence against her was obtained in violation of the Fourth Amendment, it was inadmissible in her criminal contraband cases even though it was admissible in her Escambia County probation revocation proceeding, that claim fails because it not only fails to state a facially plausible violation of the Double Jeopardy Clause, it presents essentially the same

Fourth Amendment claim as Ground One of petitioner's federal habeas petition (Grounds One and Three of petitioner's Rule 3.850 motion), which has been rejected.  *See* discussion of Ground One, *supra*.

Petitioner's fifth complaint as to Attorney Russell maintains he failed to file a motion to disqualify the trial judge (Judge Bergosh).  Petitioner raised this claim as Ground Ten of her third amended Rule 3.850 motion.  (Ex. Y, pp. 33-34).  The state circuit court identified the governing legal standard as the *Strickland* standard, (Ex. Z, pp. 2-3), and denied relief on the merits as follows:

**Failing to File Motion to Disqualify**

Defendant also alleges that her counsel was ineffective for failing to file a motion to disqualify the trial judge.  Defendant claims that the Strickland standard of prejudice is demonstrated because the result of the proceeding has been rendered unreliable because the judge was familiar with Defendant from other cases in which he had presided, Defendant's motion to appoint new counsel was denied, and Defendant was sentenced consecutively.

When considering a disqualification issue in the context of an ineffective assistance claim, "[a] defendant does not satisfy either prong of Strickland when claiming that trial counsel was ineffective for failing to file a motion to disqualify if counsel would not have prevailed on the motion."  Diaz v. State, 132 So. 3d 93, 115 (Fla. 2013) (citation omitted).  "A legally sufficient motion to disqualify must demonstrate 'some actual basis or prejudice so as to create a reasonable fear that a fair trial cannot be had."  Id. (quoting Downs v. Moore, 801 So. 2d 906, 915 (Fla. 2001)).

Defendant is unable to satisfy either prong of the Strickland standard as a motion for disqualification based upon the facts alleged

> would have been considered legally insufficient and would not have
> been granted.  See <u>D.H. *ex rel* J.R. v. Dep't of Children and Families</u>,
> 12 So. 3d 266, 270 (Fla. 1st DCA 2009) (Court's familiarity with the
> case is not legally sufficient ground for disqualification); <u>Hous. Auth.</u>
> <u>of City of Tampa v. Burton</u>, 873 So. 2d 356, 358 (Fla. 2d DCA 2004)
> ("Adverse rulings, by themselves, whether they are correct or incorrect,
> are not legally sufficient grounds upon which to base a motion
> to disqualify a judge for prejudice or bias" (citations omitted))
> (*disapproved on other grounds*, <u>Sutton v. State</u>, 975 So. 2d 1073, 1081
> (Fla. 2008)).  Defendant is not entitled to relief as to this claim.

(Ex. Z, pp. 17-18). ).  The state circuit court concluded, as a matter of state law, that

petitioner's proposed motion to disqualify the judge would not have succeeded.  The

First DCA affirmed that decision.  (Ex. DD).  This court will not second-guess the

state court's determination of state law.  *Callahan*, 427 F.3d at 932.  Because

counsel is not ineffective for failing to file a meritless motion, *Freeman, supra*, the

state court's rejection of this claim was reasonable.

Petitioner's final alleged error goes to Attorney Gooden's performance at

petitioner's sentencing.  Petitioner asserts that Attorney Gooden was deficient for

"fail[ing] to preserve for appellate review the fact that trial court denied her

downward departure when Defendant had established several valid reasons

justifying such . . . ."  (Doc. 1, p. 11).  This claim cannot provide a basis for habeas

relief, whether asserted individually or as part of a cumulative error claim, because

it does not implicate the voluntariness of petitioner's plea.

Even if it could, Attorney Gooden was not ineffective.  Petitioner raised this

claim as Ground Seven of her third amended Rule 3.850 motion.  (Ex. Y, pp. 23-

25).  The state circuit court identified the governing legal standard as the *Strickland*

standard, (Ex. Z, pp. 2-3), and denied relief as follows:

### Failing to Preserve for Appellate Review a Sentencing Error

> Defendant further alleges that her trial counsel during sentencing, Cheryl Gooden, was ineffective for failing to object to and preserve for appellate review a "sentencing error that resulted from the denial of downward departure."  Defendant also alleges that she has satisfied the prejudice prong under <u>Strickland</u> because Defendant would have prevailed on appellate review resulting in a lower sentence.

> Defendant's allegation is facially insufficient as it fails to allege proper prejudice.  <u>See</u> <u>Diaz v. State</u>, 980 So. 2d 1275, 1278 (Fla. 4th DCA 2008).  Additionally, Defendant's allegation that a "sentencing error" occurred is wholly conclusory and without factual basis.  <u>See</u> <u>Johnston v. State</u>, 70 So. 3d 472, 483 (Fla. 2011) (bare conclusory allegations are not considered facially sufficient postconviction claims). . . . Even if Defendant's claims were facially sufficient, Defendant would still not be entitled to relief.  The record indicates that the Court carefully considered all of the evidence and arguments regarding the requested downward departure and found that Defendant had not established any reason to enter a downward departure sentence. The preservation of the issue would not have changed the result of defendant's sentence.  Defendant is not entitled to relief as to this claim.

(Ex. Z, p. 15).  Petitioner's sentence was well within the terms of her plea and, as

the state court found, did not violate state law.  Counsel is not ineffective for failing

to preserve a meritless issue.  *Freeman, supra.*

None of petitioner's individual claims of attorney error has merit. The First DCA's rejection of petitioner's cumulative error claim is not contrary to, or an unreasonable application of, clearly established federal law.

Ground Three      "Sentence is illegal where it violates Constitutional Amendment 5 against prohibition of Double Jeopardy when evidence obtained in an unreasonable search and seizure was used for revocation of probation as well as a separate criminal offense and two consecutive sentences were given for two charges of contraband when offense was committed during a single episode." (Doc. 1, p. 13).

Petitioner's final ground for relief asserts that she should have been charged with only one criminal charge of introducing contraband, not two separate charges, because "it was one continuous criminal episode not predicated on [two] distinct acts but from defendant's continuous letter writing over a period of time . . . ." (Doc. 1, p. 13). Petitioner argues further:

> Regarding the same elements test, there was no temporal break, no intervening acts, no change in location and no new criminal intent as Defendant was housed in the solitary confinement cell of SRCJ during June 1 through August 3, 2010. Defendant was erroneously charged with 2 counts of contraband and a consecutive sentence for each count.

(Doc. 1, p. 14). Petitioner goes on to re-argue her Fourth Amendment claim:

> Evidence was obtained in violation of a clearly established Constitutional right not to have confidential legal mail opened outside of defendant's presence and may not be admitted in a resulting prosecution for a separate criminal offense but only for revocation of probation. While evidence obtained in violation of 4th Amendment

> may be admissible against probationer at revocation hearing, such
> evidence cannot constitutionally be admitted at criminal trial, as it was
> in this instant case, making it grounds for double jeopardy (Crosteau v.
> State).  Defendant requests habeas relief and reversal of cause where
> contraband discovered during warrantless search was utilized in both
> revocation probation hearing as well as a separate criminal hearing.

(Doc. 1, p. 14).  Petitioner asserts that she did not present this claim on direct appeal,

but presented it in her Rule 3.850 proceeding.  (*Id.*).  Respondent asserts that this

claim is procedurally defaulted because the only claims presented in petitioner's

Rule 3.850 proceeding were ineffective assistance of counsel claims.  (Doc. 22, pp.

57-63).  Respondent argues in the alternative that the issues raised in this claim were

waived by petitioner's guilty plea and, in any event, are without merit.  (*Id.*, pp. 60-

63).

Petitioner raised this claim in her direct appeal as Ground Four of her *pro se*

initial brief.  (Ex. R, pp. 11-14).[7]  The First DCA summarily affirmed without

explanation.  (Ex. S).

The First DCA reasonably could have rejected petitioner's Fourth

Amendment challenge on grounds of waiver and lack of merit, as explained above.

*See* discussion *supra* Ground One.  As to the double jeopardy issue, the First DCA

reasonably could have rejected that claim as well, on grounds of waiver.

---

[7] Appellate counsel filed an *Anders* brief.  (Ex. P).

The charging document in Case No. 11-CF-249 reads:

> **KIMBERLY MARY CANNON, on or between July 4, 2010 and August 3, 2010**, . . . did unlawfully introduce into or possess upon or attempt to send from the grounds of a county detention facility, **Santa Rosa County Jail** a contraband article, to-wit: **any written or recorded communication to-wit:   an envelope addressed in handwriting to "Tim Grantham, Public Defender's Office, Tony Henderson" containing nine (9) addressed envelopes and ten (10) letters and/or written instrumentalities intended to be used as an aid in effecting or attempting an escape from the custody of the Santa Rosa County Jail, said acts of introduction, possession, and attempt to send not duly authorized through regular channels of said county detention facility or the Sheriff of Santa Rosa County,** in violation of section 951.22, Florida Statutes.

(Ex. A2).  The charging document in Case No. 11-CF-250 reads:

> **KIMBERLY MARY CANNON, on or between June 1, 2010 and June 30, 2010**, . . . did unlawfully introduce into or possess upon or attempt to send from the grounds of a county detention facility, **Santa Rosa County Jail** a contraband article, to-wit: **any written or recorded communication to-wit:  an envelope addressed to "Tina, for: Tony Henderson, Atty, 190 Governmental Center, Pensacola, FL 32502" containing sixteen (16) sealed letters and/or written instrumentalities intended to be used as an aid in effecting or attempting an escape from the custody of the Santa Rosa County Jail, said acts of introduction, possession, and attempt to send not duly authorized through regular channels of said county detention facility or the Sheriff of Santa Rosa County,** in violation of section 951.22, Florida Statutes.

(Ex. B2).

The charging documents allege two distinct instances where petitioner, on two

separate occasions, attempted to smuggle separate packages of contraband out of the

jail.  The two separate packages of letters were smuggled on separate dates, in separate manila envelopes, and by separate means.  At the plea hearing, the State introduced a lengthy factual basis for petitioner's pleas, demonstrating that the two counts, separately charged in two different cases, occurred on separate dates and were separate events.  (Ex. G, pp. 14-17).  When petitioner pleaded guilty to both charging documents, she conceded guilt to two separate offenses.  Petitioner's double jeopardy challenge is foreclosed by her guilty pleas and convictions.  *See Broce*, 488 U.S. at 575-76 (holding that defendants waived their double jeopardy challenges by pleading guilty to indictments that, on their face, described separate offenses).

The First DCA's rejection of petitioner's claim is not contrary to or an unreasonable application of clearly established Federal law.  Petitioner is not entitled to federal habeas relief on Ground Three.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed,

even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted).  Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.   That the petition for writ of habeas corpus (doc. 1), challenging the judgments of conviction and sentences in *State of Florida v. Kimberly Mary Cannon*, Santa Rosa County Circuit Court Case Nos. 11-CF-249 and 11-CF-250, be DENIED.

2.   That the clerk be directed to close the file.

3.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 7th day of February, 2017.

*/s/* *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.